**PAN AMERICAN LIFE INS. CO. v. MAYFIELD et al.**

**No. 429.**

District Court, E. D. South Carolina.
Nov. 30, 1929.

J. Waties Thomas and Alva M. Lumpkin, both of Columbia, S. C., for complainant.

William C. Wolfe, of Orangeburg, S. C., and S. G. Mayfield and W. E. Free, both of Bamberg, S. C., for the Mayfield defendants.

H. L. Erckmann and Huger, Wilbur, Miller & Mouzon and J. N. Nathans, all of Charleston, S. C., for certain judgment creditors.

J. A. Mace, of Hampton, S. C., pro se.

ERNEST F. COCHRAN, District Judge.

The plaintiff brought this bill to foreclose a mortgage on a certain tract of land containing about 756 acres, executed by the defendant Leda K. Mayfield to the Old Dominion Trust Company to secure certain bonds executed by her to the same company and guaranteed by the defendants J. K. Mayfield and W. D. Mayfield. The bonds and mortgage were assigned by the Old Dominion Trust Company to the plaintiff, the Pan American Life Insurance Company.

Several of the defendants were made parties because they were judgment creditors of the defendant Mrs. Leda K. Mayfield, and it was asserted that the judgments were subsequent to the plaintiff's mortgage. The remaining defendants were made parties because it was alleged that they claimed some interest in the premises, which was also asserted to be subsequent to the plaintiff's mortgage. Sundry of the defendants answered and merely set up their claims of judgments liens, and asked that they be paid in the order of their priority. The defendant S. G. Mayfield, Sr. (who is the husband of the defendant Mrs. Leda K. Mayfield, and the father of the defendants J. K., W. D., and Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams), answered, setting up a claim of title in himself to all the interest of Mrs. Leda K. Mayfield in the land described in the complaint by virtue of a sheriff's sale under execution of certain of the judgment creditors, but no claim is made that his interest is prior to the lien of the plaintiff's mortgage. The defendant J. A. Mace answered and set up a mortgage executed to him by S. G. Mayfield, Sr., covering the tract described in the bill of complaint, and certain other tracts of land, and asks that his mortgage be foreclosed and that he be paid his debt from the proceeds of sale, but no claim is made by him of any priority over the mortgage of the plaintiff, so far as the tract of land described in the complaint is concerned. The defendants Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams, by their answers, claim title to the land by virtue of a deed which it is claimed was executed to them by their mother, Mrs. Leda K. Mayfield, on January 8, 1918, and which it is alleged was recorded on January 10, 1918; and they claim that the mortgage now owned by the plaintiff having been executed and recorded after that time, they have paramount title, and that the land therefore cannot be subjected to the payment of plaintiff's mortgage. The plaintiff has assailed the validity of this deed and the recording thereof on a number of grounds, but it will not be necessary to discuss all of them. The case was heard and the testimony and evidence presented before me in open court. It is very voluminous, and the counsel for the parties have made oral arguments and filed briefs in support of their several contentions. Some phases of the case are of a most unusual and serious nature and have given me considerable concern. I shall not attempt to set forth all of the evidence or discuss the facts or points of law in detail. It is sufficient to say that I have, in view of the importance and gravity of the case, given it very careful and earnest study. I will be unable to write a full opinion, but am merely making this as a memorandum opinion and instructions for the attorneys in the preparation of the final decree, in order that it may be clearly understood what should be included in the final decree. I shall advert to the main points of the case only and as briefly as possible.

The main dispute has been concerning the execution and recording of the deed under which the defendants Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams claim. They claim that this deed was duly executed on January 8, 1918, and recorded on January 10, 1918. It is undisputed that the plaintiff's bonds and mortgage were executed on June 11, 1919, and duly and properly recorded on June 11, 1919. It follows therefore that if the deed to Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Wil-

liams was duly executed and duly recorded on the dates it purports to have been executed and recorded, then those defendants have paramount title and the plaintiff's mortgage cannot be foreclosed as against them.

It is undisputed that the deed to Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams was not recorded in the auditor's office, nor is there any auditor's certificate on the back of the deed showing such record. The plaintiff therefore claims that inasmuch as the statute of South Carolina (Civ. Code S. C. 1922, § 2178) makes it a prerequisite to the recording of a deed in the office of the register of mesne conveyance, that it should be first recorded in the office of the auditor, that any recording of the deed in the register's office would be illegal and therefore no notice to the plaintiff. While the language of the statute is very strong, nevertheless I am compelled to think that it is directory, and not mandatory. The evident purpose of the statute was to prevent real estate from escaping taxation. It is therefore the duty of the register not to record a deed until he has the auditor's certificate that it has been recorded in the auditor's office. But I do not think that the failure to record a deed in the auditor's office would invalidate its record in the register's office. If such be the law, then every attorney or other person who passes upon any title would be compelled not only to search the register's office for the record of every deed, but would be compelled also to make a search in the auditor's office to see if the deed was properly recorded there. But the almost universal practice of attorneys is to make the search in the register's office and rely upon what is disclosed there, without making a search in the auditor's office for the purpose of ascertaining whether it is recorded there. It is true that a search of the auditor's office and the treasurer's office should be and usually is made for the purpose of ascertaining whether the taxes have been paid, but this search is with that end in view, and not for the purpose of ascertaining whether any particular deed has been recorded or not. The search to ascertain whether any taxes are due or not need not extend beyond the period of limitation prescribed for taxes, and such search would not disclose that old deeds not within the limitation period had not been recorded in the auditor's office. It is also true that the last statute requiring recording in the auditor's office does undertake to validate certain deeds which had not been recorded in the auditor's office, as required by the previous statute, and is a very strong indication that the Legislature thought that such recording was necessary to the validity of a record in the register's office. But in view of the court's own knowledge of what is the almost universal practice, I should hesitate to declare the recording of a deed in the register's office void, on the ground that it had not been first recorded in the auditor's office; for in all probability it would upset many titles in this state, and I do not care to make such a ruling, in the absence of a very plain intent of the Legislature requiring it. But while the failure to record in the auditor's office does not necessarily, as a matter of law, invalidate the record in the register's office, nevertheless the fact that it was not recorded in the auditor's office is a circumstance upon the question of whether the deed was recorded at all in the register's office at the proper time and may be considered by the court in deciding that issue.

This brings me to a consideration of the main conflict and dispute between the parties. It is asserted by the plaintiff that the deed from Mrs. Leda K. Mayfield to Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams was not executed or recorded prior to the execution and recording of the plaintiff's mortgage, but that the deed was executed later, and the same was placed on the deed book in the register's office, without authority from the register, and after the execution and recording of the plaintiff's mortgage. I listened very attentively to the testimony and evidence presented, and have given much thought to this question. There are a large number of circumstances which point very strongly indeed to the conclusion that the deed in question was not on record in the register's office at the time of the execution and recording of the plaintiff's mortgage. It is certainly very difficult, if not impossible, to explain all of these circumstances, and especially the conduct of the various parties in the cause, upon any other theory than the theory that the deed was not then on record. On the other hand, the fact that the deed in question, along with another deed claimed to have been executed at the same time by Mrs. Mayfield, now appears in the record book, a bound volume, when taken in connection with certain other circumstances in the case, is very difficult to explain, except on the theory that the deed in question was on record when plaintiff's mortgage was executed and recorded. I shall not undertake to review all of these circumstances pro and con; but it is sufficient to say that I

have come to the conclusion that it is much more difficult to find an explanation for all the various circumstances, including especially the conduct of the parties, consistently with the theory that the deed had then been executed and recorded as is now claimed, than it is to suggest a reasonable hypothesis to account for the fact that the deed does now appear upon the record. In such circumstances, it seems to me that I have no other recourse than to come to the conclusion that the deed in question was not on record when plaintiff's mortgage was executed and recorded, and therefore the parties cannot claim under that deed title paramount as against the mortgage. But in view of the difficulties of the case and in view of the fallibility of human judgment, it is possible that I may be mistaken in the conclusion I have reached above as to the recording of the deed, and if the final decree should be rested upon that ground alone, an injustice might possibly be done to the parties. But there is another ground which the plaintiff claims prevents the defendants Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams from setting up, or claiming under, the deed in question, as against its mortgage, and on that ground I have no doubts whatever. It is asserted that these two defendants are estopped by proceedings in another case in this court and their conduct thereunder. In order properly to understand the plea of estoppel, it will be necessary to recite briefly the facts relating to this plea.

In 1923, the plaintiff brought a foreclosure suit in this court against Mrs. Leda K. Mayfield, J. K. Mayfield, W. D. Mayfield, Stanwix G. Mayfield, Jr., Mrs. Christabel M. Williams, and certain other parties, to foreclose this same mortgage. The bill in that case alleged, among other things, the execution, recording, etc., of the same mortgage by Mrs. Mayfield, to secure the same bonds executed by her and guaranteed by J. K. and W. D. Mayfield. It is alleged in that bill that Mrs. Christabel M. Williams and Stanwix G. Mayfield, Jr., were made parties because they had or claimed some interest or lien upon the mortgaged premises by reason of judgments of record, but the bill alleged that those liens were subsequent to the lien of the mortgage of the plaintiff. In that proceeding, Stanwix G. Mayfield, Jr., and Mrs Christabel M. Williams each filed a separate answer by their attorney, and the answer was sworn to by them respectively before a notary. Those answers merely claimed that they held judgments, respectively, against the defendant Mrs. Leda K. Mayfield, and admitted that they were junior to the mortgage executed by Mrs. Mayfield and described in the plaintiff's complaint. Nowhere in either of the answers did either of them make any claim whatsoever that they or either of them had any interest in the land by virtue of any deed or other instrument whatsoever. That case proceeded to a final decree for foreclosure and sale of the property, adjudging that the plaintiff's mortgage was a first lien upon the premises and should be paid first, and directing that the judgments claimed by the defendants Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams should be paid after the satisfaction of the plaintiff's mortgage. The premises were not sold under this decree; but *after* the final decree and before any sale, there was entered by consent of all the parties to that suit, a supplemental decree, which recited in substance that all of the indebtedness secured by the mortgage was not then past due, and that Mrs. Leda K. Mayfield had agreed to pay all of the past-due indebtedness, if the complainant would accept the same, and the cause should be dismissed as by the consent of the parties and not as a judicial finding, without prejudice to the right of the complainant to institute another proceeding for the foreclosure of the mortgage then sued on, should the defendant Mrs. Leda K. Mayfield thereafter become in default under the terms thereof. Mrs. Leda K. Mayfield then paid the past-due indebtedness in accordance with this agreement, and this money, it appears, was furnished by S. G. Mayfield, Sr. Mrs. Leda K. Mayfield, S. G. Mayfield, Sr., J. K. Mayfield, and W. D. Mayfield, signed a renewal agreement, whereby the balance of the mortgage was extended and made due and payable in instalments as set forth in that agreement. At no time during these proceedings did the defendants Stanwix G. Mayfield, Jr., or Mrs. Christabel M. Williams, or their attorney, or any one acting for them, ever mention or suggest in the slightest way that they had a deed covering the premises in question and held title paramount. The plaintiff was left completely in the dark as to the existence of such deed or any claim to be made thereunder. Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams were then of age, and according to the testimony before me, they then knew of the existence of the deed and of their rights thereunder. All of the other parties mentioned, namely, Mrs. Mayfield, J. K. Mayfield, W. D. Mayfield, and S. G. Mayfield, Sr., knew of the ex-

istence of this deed and of the rights that might be claimed for Mrs. Williams and Stanwix G. Mayfield, Jr., thereunder. But none of them ever mentioned it or brought any knowledge of it home to the plaintiff, and there is no showing before me or claim made that the plaintiff at that time knew or had any grounds to believe that such a deed was in existence or on record. (In justice to the attorney who represented Stanwix G. Mayfield, Jr., and Mrs. Williams, in that case, it should be stated that he had no knowledge of the existence of the deed or its record until long after the proceedings in that case were ended.) Under the decree of foreclosure rendered by the court in that case, the plaintiff had acquired an absolute right to a sale and that the proceeds should be first applied to its mortgage, and as long as that decree stood, neither Stanwix G. Mayfield, Jr., nor Mrs. Christabel M. Williams could ever set up their deed as against this plaintiff. In that situation, with no knowledge on the part of the plaintiff of any secret claims they had, the plaintiff gave up its rights under the final decree in that case and granted an extension of time on the remaining portion of the mortgage debt. Can any reasonable man doubt that if these defendants or any one of them had given the slightest hint at that time that there was an outstanding deed in favor of these two defendants, paramount to the claim of the plaintiff, or if the plaintiff had had the slightest knowledge upon the subject of any such claim, that the plaintiff would ever have been willing to have agreed to the superseding of that final decree and the canceling of all their rights thereunder, or would have agreed to give the parties an extension of time for the payment of the major portion of the mortgage debt? The defendants were silent when they should have spoken, and now they will not be heard when they should be silent. When all the facts and circumstances of the case are considered, it is as plain a case for the application of the salutary rule of estoppel as has probably ever been presented to a court. The two defendants claiming under the deed assert that the estoppel does not apply, because the supplemental decree provides "that the parties to, this cause be, and they are here restored to the same status that would have existed between them had this cause never been commenced as far as consent of the parties hereto can effect the same." It is asserted that by virtue of this clause they are restored to the condition that existed prior to the institution of the foreclosure, and that therefore they can now plead the deed, just as they could have plead it, if that suit had never been instituted. But this argument is unsound. It ignores entirely the fact that the defendants, by their conduct in the case and their silence and failure to speak when the supplemental decree by consent was agreed to and the extension of time granted, misled the plaintiff into giving up valuable rights under the original decree of foreclosure and sale. In other words, the plaintiff would never have consented to an agreement restoring the defendants to their supposed rights, if there had been anything in their conduct or in the pleadings in that case to indicate in the slightest way that they had any rights of the nature now claimed. I have no doubt that the defendants Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams are estopped from setting up any claims under the deed in question.

The plaintiff has attacked the deed in question upon several other grounds, but I do not deem it necessary to pass upon them, as in my judgment the conclusions I have reached are sustained by what is said above, and in case of an appeal, the plaintiff of course will be at liberty to present to the appellate court any grounds it may deem advisable to sustain the decree which will be rendered in its favor.

Now, as to the claim of J. H. Mace to foreclose his mortgage, not only upon the lands described in the complaint herein, but upon other lands covered by his mortgage, I do not think such relief can be granted to him in this case. All the relief that can be given to him in this case is to provide for the payment of his mortgage in the order of its priority from the proceeds of sale of the land described in the complaint. As to the other lands covered by Mr. Mace's mortgage, no adjudication will be made in this court; but he will be remitted to any rights he may have to proceed by an independent foreclosure as to them. But so far as the proceeds from the sale of the tract of land described in the bill of complaint is concerned, Mr. Mace has a claim, justiciable in this court, but his claim is subsequent to the satisfaction of all the claims of the plaintiff, the Pan American Life Insurance Company.

As to the claims of the judgment creditors who are made parties to this suit, it appears that Mrs. Leda K. Mayfield's interest in the land in question was sold under execution by the sheriff in the county where the judgments were filed, and therefore the

claims of those judgment creditors (which, in any event, would be subsequent to the claims of the plaintiff herein) were extinguished, so far as the tract of land described in the complaint is concerned. The decree therefore cannot make any provision for the application of any part of the proceeds of sale of the land described in the complaint to the claims of these judgment creditors.

S. G. Mayfield, Sr., has acquired Mrs. Leda K. Mayfield's interest in the land by sale under executions against her. But his claim is subsequent to plaintiff's mortgage. From the evidence before me, he had at all times full knowledge of the deed to Stanwix G. Mayfield, Jr., and Mrs. Williams, and can make no claim as against them. Nor does he make any claim as against them, or as against the plaintiff's mortgage, or as against Mr. Mace's mortgage. Under the facts stated, no part of the proceeds of sale can be paid to him.

I find therefore that the plaintiff's mortgage constitutes a first and prior lien on the premises described in the complaint (including a reasonable attorney's fee, not exceeding 10 per cent., which will be fixed by the court after hearing the parties thereon when the final decree is presented for signature) and should be paid first from the proceeds of sale (after payment of costs and expenses of this suit, and taxes, if any) ; and that the mortgage of J. A. Mace (including also a reasonable attorney's fee not exceeding 10 per cent. to be likewise fixed by the court when the final decree is signed) constitutes a second lien upon the premises and should be paid next from the proceeds of sale; and if any surplus then remain it should be paid to Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams.

The plaintiff is, of course, entitled to judgment against Mrs. Leda K. Mayfield, J. K. Mayfield, and W. D. Mayfield, for the amount due on its bonds and attorney's fee.

The amounts due under plaintiff's bonds and mortgage and Mr. Mace's mortgage are not in dispute and should be computed and fixed by the final decree.

The final decree should be in the usual form, but the attorneys are directed, in preparing it, to make the same conform to the following specific instructions:

1. The provisions for sale shall conform to the requirements of U. S. Code, title 28, §§ 847 and 849 (28 USCA §§ 847, 849).

2. The proceeds of sale shall be applied in the following order and priority, to wit: (1) To payment of costs and expenses of this action (including compensation of the special master) ; (2) to payment of taxes, if any; (3) to payment of plaintiff's mortgage debt and attorney's fee as above provided; (4) to payment of J. A. Mace's mortgage debt and attorney's fee as above provided; and (5) the surplus, if any, is to be paid to Stanwix G. Mayfield, Jr., and Mrs. Christabel M. Williams.

3. The sale to be for one-half cash and the remainder in equal installments, due in one and two years, respectively, with interest on the deferred installments from date at 7 per cent. per annum, payable annually, secured by bond and mortgage of the premises, with the usual attorney's fee and insurance clauses, and the usual foreclosure and receivership clauses and right to take possession and collect the rents in case of default; with leave to purchaser to pay all cash.

4. The final decree should also provide for the appointment of a special master to make the sale and carry out the provisions of the decree, and the parties may agree upon such special master subject to the approval of the court, and if they fail to agree, the court will appoint a special master when the final decree is signed.

5. The final decree should also provide that all bidders should make a deposit in cash or certified check in such an amount as the parties may agree to be reasonable and proper, and in case they fail to agree upon the amount, the court will fix the amount when the final decree is signed.

The court reserves the right to make any changes in the form or contents of the final decree when the same is presented as may be advisable.

Let the attorneys for the plaintiff prepare a final decree of foreclosure and sale in the usual form in accordance with the foregoing, serve a copy on the several attorneys for the defendants, and submit the same to the court for signature, upon four days' notice to said attorneys of the time and place of such submission.